IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

BRIAN RANDLE, JAMES COBB,
MARK SIDES, KEVIN WHITE,
DAVID WILLIAMS, SHANE WOMMACK,
BOBBY SIMMONS, BRADLEY MEDLIN,
EDWARD LATHAM, JAMES KING,
JAMES JOHNSON, BRADLEY JERNIGAN,
JAMES HEROD, TIMOTHY HATCHER,
RICHARD BRYANT AND RICHARD HAMRIC                     PLAINTIFFS

VS.                              CIVIL ACTION NO.: 3:05-cv-0074-MPM-SAA

CITY OF NEW ALBANY, MISSISSIPPI                          DEFENDANT

_____

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY AND CROSS-MOTION FOR SUMMARY JUDGMENT ON ISSUES OF EQUITABLE TOLLING AND EQUITABLE ESTOPPEL**
_____

COMES NOW the City of New Albany, Mississippi ("the City"), Defendant in the above-styled and numbered cause, and files this *Response to Plaintiffs' Motion for Partial Summary Judgment as to Liability and Cross-Motion for Summary Judgment on Issues of Equitable Tolling and Equitable Estoppel*, and states as follows:

## I. <u>INTRODUCTION</u>

Plaintiffs have requested summary judgment on the following issues: (1) that the Plaintiffs are entitled to overtime pay; (2) that the City of New Albany's failure to pay overtime meets the "wilful" standard set forth in 29 U.S.C. Section 255(a) ("a cause of action arising out of a wilful violation may be commenced within three years after the cause of action accrued"); and (3) that the applicable statute of limitations set forth in 29 U.S.C. Section 255(a) should be tolled under a theory of equitable estoppel/tolling.

## II.  DEFENDANT'S REVISED FACTUAL SUMMARY

Following the filing of the parties motions for summary judgment, a minute entry

contained in the City of New Albany minute books dated May 7, 1985, was discovered and

produced to counsel opposite.  The disclosure of this document led to the depositions of Roger

McMillin, former City Attorney, and Jim Owen and Tom Cooper, former city officials.  The

minute entry is attached hereto as Exhibit "A", and states, in relevant part:

RE: Compliance with Wage and Hour Law
Fair Labor Standards Act

City Attorney, Roger H. McMillin, Jr. reported to the Mayor and Board of
Aldermen on a Supreme Court ruling whereby certain city employees must now
be paid time and a half for hours worked over 40 hours in a work week.  Mr.
McMillin advised the board that the City must comply with the minimum wage
and overtime provisions of the Fair Labor Standards Act and suggested that new
work schedules be established for the Police and Fire Department employees, the
two Department affected by the ruling.  After discussion, Alderman Kenneth
Beasley moved to change the Police Department employees to an eight day work
cycle and the **Fire Department to an 18 day work cycle**.  Motion was seconded
by Alderman Thomas Cooper with all five Aldermen present voting "Yea" and
none voting "Nay."  (Emphasis added).

McMillin was attorney for the City of New Albany from 1982 to 1994.  (McMillin dep.,

Exhibit "D", p. 5).  McMillin testified that he received notice of the *Garcia* case[1] from the

Mississippi Attorney General through a memorandum sent to all city attorneys.  (*Id.* at p. 7).

Said memorandum, dated March 11, 1985, is attached hereto as "B."  As a result of the *Garcia*

decision, McMillin testified "our aim was to come up with a work schedule that would bring the

city into compliance with the wage and hour for the entities that did not work a regular 40 hour

week.  You know, five days on and the weekend off.  And that would have been the police

---

[1] *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83
L.Ed.2d 1016 (1985).

2

department and the fire department." (*Id.*). Prior to the May 7, 1985 meeting, McMillin notified

then Mayor Bill Henson the issue needed to be dealt with by the City. Said letter is attached

hereto as Exhibit "C." Although McMillin's recollection of the minute entry was vague,

considering some twenty-one (21) years had passed, he testified as follows:

> Q. How did you come to a decision to, or a suggestion to the board, to make it a
> 18 day work cycle?
>
> A. I have no recollection except that we researched the issue as best we could.
> We gathered as much information as we could about what were acceptable work
> schedules for these types of operations that complied with the wage and hour law,
> and adopted a work schedule that was designed and intended to, if it was
> followed, to avoid the issue of overtime for police and firemen. (*Id.* at p. 8).

Tom Cooper, an alderman who voted for the adoption of the 18 day work cycle, and a

former Mayor of the City of New Albany, testified "[w]e were told by the city attorney who was

Roger McMillin, that changing the days as specified in here would make us in compliance with

Wage and Hour Laws." (Cooper deposition, Exhibit "E", p. 10). Jim Owen, a former alderman

who took office in July, 1985, attended the board meetings as a private citizen and recalled

discussions about the wage and hour situation. (Owen deposition, Exhibit "F", p. 7). Following

the municipal convention held in the summer of 1985, Owen discussed the matter with

McMillin. (*Id.* at 8). He testified that "it was set up so that the firemen in particular I recall were

being paid – they were on 24 and off 48 and there was a work period that had been adopted by

the prior administration that put them in compliance with that work schedule." (*Id.*). Owen was

satisfied the City was in compliance. (*Id.* at 11).

### III. <u>ARGUMENT</u>

3

A.  **Plaintiffs' Entitlement to Overtime Pay**

Plaintiffs argue "there can be no dispute that plaintiffs are entitled to overtime pay."  The City does not dispute the contention that overtime pay is due to plaintiffs.  Despite an honest belief the 18 day work schedule adopted on May 7, 1985 put the City in compliance with the wage and hour provisions of the Fair Labor Standards Act, there is no dispute the firemen are owed some amount of overtime.  The fact the fire fighters work shifts of 24 hours on, 48 hours off has never been disputed.  In fact, the firemen have always worked these shifts - before and after the adoption of the 18 day work period.  As applied to an 18 day work period/cycle, each fireman would have worked 144 regular hours during a work period:[2]

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|----|----|----|
| 24 | X | X | 24 | X | X | 24 | X | X | 24 | X | X |

| 13 | 14 | 15 | 16 | 17 | 18 | |
|----|----|----|----|----|----|---|
| 24 | X | X | 24 | X | X | Total Hours = 144 |

Pursuant 29 C.F.R. Section 553.230, the maximum hour threshold for an 18 day work period is 136 hours.  Therefore, it is undisputed that each firemen is owed overtime pay for any hours worked in excess of 136 hours during any one 18 day work period.  Assuming a fireman worked his regular work shifts, eight (8) hours of overtime would be owed for each 18 day work period (144-136).

There are several issues to be determined before the actual amount of overtime due can be determined.  However, the threshold issue, and the issue before the court in this motion and the

_____

[2]Prior to the discovery of the May 7, 1985 minute entry, the City was traveling under the assumption a 21 day work period was adopted based on the fact the 24/48 work shifts also cycle on a regularly recurring 48-48-72 schedule.  Under the 21 day scenario, the Section 553.230 threshold is 159 hours.  Therefore, assuming a fireman worked his regular shifts, nine (9) hours of overtime would have been owed for each work period (168-159).

4

City's motion for summary judgment, is whether the City is entitled to the 7(k) exemption (29 U.S.C. Section 207(k)). If the 7(k) exemption does not apply, then the firemen are owed overtime pursuant 29 U.S.C. Section 207(a), the standard "40 hour" provision.

In support of their contention the City did not implement a 7(k) work period, plaintiffs rely on the following: (1) lack of documentation or proof the City "actually adopted any work period allowed under Section 7(k)"; (2) failure by the City to pay the Plaintiffs in accord with a Section 7(k) work period; (3) City Clerk Anne Neal's testimony the Plaintiffs' paychecks are based on a 40 hour work week and that the City never implemented or adopted any work period under Section 7(k).

**1.      Lack of Documentation/Failure to Pay Plaintiffs in Accord with a 7(k) Schedule**

The parties' respective motions were filed prior to the discovery of the May 7, 1985 minute entry demonstrating the City adopted an 18 day work period for purposes of compliance with the wage and hour provisions of the FLSA.

In *Singer v. City of Waco, Texas*, 324 F.3d 813 (5th Cir. 2003), the plaintiff firemen also worked 24/48 shifts, and were paid every two weeks. The City of Waco argued it established a twenty-eight (28) day work period; plaintiffs argued a fourteen (14) day work period had been adopted. The only evidence the city presented in support of their position was a memo from the fire chief stating "[a] 28-day work cycle will be established." *Id.* at 820. The Fifth Circuit held the memo, coupled with contradictory evidence supporting the fourteen day work period, was insufficient to disturb the jury's determination the city had established a fourteen day work period.

The May 7, 1985 minute entry is certainly more than the memo presented in *Singer*,

which was nothing more than a statement from the <u>fire chief</u> that a work cycle <u>would be</u>

established, i.e., there was no evidence the <u>City of Waco</u> officially adopted a 7(k) work period.

On May 7, 1985, the City of New Albany, through its Mayor and Board of Aldermen, officially

adopted an 18 day work period for the firemen.  The eighteen day work periods regularly

recycles, with each fireman working a regular schedule of 144 hours each work period.  In

*Lamon v. City of Shawnee, Kansas*, 972 F.2d 1145 (10th Cir. 1992), plaintiffs argued the city's

written adoption of 28 day work period was insufficient to support a finding the City of Shawnee

had indeed "established" a 7(k) work period.  Specifically, plaintiffs argued "the evidence [did]

not show that the City established a bona fide work period under [Section] 207(k), because the

compensation and scheduling practices under the new system were no different from those in

effect [prior to the written adoption of the 28 day work period].  Based on those facts, Plaintiffs

conclude that the City did not properly convert to a subsection (k) regime." *Id.* at 1151.  The

Tenth Circuit disagreed, holding that "[b]y adopting the measure, the City took the necessary and

sufficient step to establish a subsection (k) regime." *Id.* at 1154.[3]  *See also Adair v. City of*

*Kirkland*, 175 F.3d 707, 713 (9th Cir. 1999) ("[t]ogether with the City's affirmative statement that

it was establishing a section 7(k) exemption, the regularly recurring work period shows that the

City established a 7(k) exemption.").

The City does not disagree with Plaintiffs' contention the City "<u>can</u> show that it

actually pays its fire fighters in accordance with [a 7(k) work] period."  However, the applicable

---

[3]The Tenth Circuit added "the 7(k) plan is more properly denoted an optional regime, whose determination lies solely with the City's exercise of choice.  The establishment of the instant plan was not dependent on the affirmative satisfaction of extrinsic conditions, as would be, for example, a subsection (f) plan or, indeed, some other subsection (k) plans . . ..[citations omitted]." *Id.* at 1153, n. 11.

6

case law, statutes and regulations clearly demonstrate payment in accord with a 7(k) schedule is not <u>mandatory</u>.  In *Singer*, *supra*, the City of Waco contended the district court gave an improper jury instruction on grounds it "misled the jury into thinking that a municipality can only establish a particular work period if it pays its employees in accordance with that work period."  *Singer v. City of Waco, Texas*, 324 F.3d at 819.  The Fifth Circuit held the instruction did not misstate the law, stating "[t]he district court correctly told the jury that the City *could* establish a particular work period by demonstrating that it 'actually pays its fire fighting employees in accordance with the longer work period.'" [Citation omitted].  (Emphasis supplied).  The Fifth Circuit added:

> As the City observes, a municipality does not have to adopt a pay period that precisely matches its work period to qualify for a [Section] 7(k) exemption.  *See* C.F.R. [Section] 553.224 (observing that a work period established under [Section] 207(k) "need not coincide with the duty cycle or pay period'); *Franklin v. City of Kettering, Ohio*, 246 F.3d 531, 535 (6th Cir. 2001) ("By stating that the work period 'need to coincide' with the duty cycle or pay periods, the regulation provides that there need be no relationship between the work period and the duty cycle."); *Adair v. City of Kirkland*, 185 F.3d 1055, 1061 (9th Cir. 1999) ("[T]he City's failure to conform its payroll practices does not negate the existence of the plan.").  *Id.*

Therefore, the fact the City of New Albany did not alter the fire fighters' work shifts or weekly pay periods[4] after adoption of the 18 day work period on May 7, 1985 is inconsequential.  Although the City also contends an affirmative statement is not required to establish a 7(k) work period, such an affirmative statement was made on May 7, 1985.  This action was sufficient to establish a Section 7(k) work period of 18 days.

## 2.    **Anne Neal's Testimony**

Finally, plaintiffs base their contention the City never adopted a 7(k) plan on the

---

[4]It is undisputed all City of New Albany employees have been paid on a weekly basis since 1981.

deposition testimony of Anne Neal, who "testified in her deposition that the Plaintiffs' paycheck are and consistently have been based on a forty (40) hour work week, and that the Defendant never implemented or adopted any work period under Section 7(k)."

Anne Neal was elected to the position of city clerk in July, 1989. She testified she did not know anything about the implementation of a work period for the firemen. (Neal dep., Exhibit "E", p. 36). Notwithstanding the fact the city clerk has no role with the implementation of city policy, she was not the city clerk at the time the May 7, 1985 work period was adopted.[5] Plaintiffs again refer to the *Singer* case, where the plaintiffs offered the testimony of the city's finance director, who testified she "understood the work period to be the same as the pay period [14 days]." *Singer v. City of Waco, Texas*, 324 F.3d at 820. In that case, her testimony directly contradicted the City of Waco's position a 28 day work period had been established. In this case, Ms. Neal's testimony does not contradict the City of New Albany's position an 18 day work period was established – Ms. Neal simply had no knowledge of a work period.

An examination of how payroll is handled by Ms. Neal demonstrates that she is not concerned about the number of hours worked by each firemen. Attached hereto as Exhibit "H" are exemplars of weekly pay records authored by Chief Richard Hamric and turned into the city for payroll purposes. (Neal dep., pp. 38-39). The check marks found on these records indicate that a fireman has worked his regular hours which, again, are 24 on, 48 off. Each fireman is paid a weekly salary based on an annual salary. (Neal dep., p. 19). Ms. Neal was not concerned with the number of hours worked, or whether a work period had been established. Each fireman was simply paid a weekly salary for their regularly scheduled hours.

_____

[5]Anne Gregory was city clerk on May 7, 1985. (McMillin dep., p. 11).

8

Plaintiffs contend "the Defendant sets an annual salary for each firemen that is based on a forty (40) hour work week." This is simply not true. Ms. Neal testified as follows:

Q. And make sure - - I want to make sure I understand what you are saying. They had an annual salary, whatever it was. I guess - - I assume you would divide that by 52 and that's how much they would make a week?

A. You could do it that way. We were instructed to divide it, the annual salary by 2,080 hours to come up with an hourly rate **but strictly for the purposes of reaching an overtime rate**.

(Neal dep., p. 19) (emphasis added).

The records contained within Exhibit "H" do have additional hours identified as overtime. Ms. Neal testified that two or three years ago, the City of New Albany began paying the firemen overtime for coming back for meetings or working a fire while not on a scheduled shift. (Neal dep., p. 21). The overtime rate was based on a 40 hour week. This is not evidence the firemen were not salaried employees, or that annual salaries were based on a 40 hour week. In *Lamon, supra*, the City chose to pay overtime based on the 40 hour rate for all hours worked in excess of 40 hours. The Court, upholding the city's adoption of a 7(k) work period, stated "[t]he City chose to continue paying overtime starting at a lower threshold, a state of affairs which inured to Plaintiffs' benefit and which was the City's prerogative to devise." *Lamon v. City of Shawnee, Kansas*, 972 F.2d at 1154; *see also Local 889, American Federation of State, County, and Municipal Employees v. Louisiana*, 145 F.3d 280, 283-284 (5th Cir. 1998) (7(k) exemption not waived by paying overtime below thresholds). Further, the City employs a payroll system that handles all departments, including those that are paid based on an hourly rate/40 hour week (street and sanitation departments). (Neal dep., p. 39). Ms. Neal testified she knows of no way to calculate overtime on anything other than a 40 hour week. *Id.* This is simply a limitation

on the City's payroll system, and not evidence the firemen are paid a salary based on a 40 hour

work week.

Whether a 7(k) work period has been adopted is normally a jury question.  *See Lee v.*

*Coahoma County*, 937 F.2d 220, 224-225 (5th Cir. 1991) (case remanded to district court for

determination of appropriate work period).  However, "if there is no issue of material fact,

disposition of this issue would be appropriate by summary judgment."  *Birdwell v. City of*

*Gadsen, Alabama*, 970 F.2d at 806, n. 2; *see also Barefield v. Village of Winnetka*, 81 F.3d 704,

710 (7th Cir. 1996) (uncontradicted facts warrant summary judgment).  There are no genuine

issues of material fact as to whether the City of New Albany adopted an 18 day work period on

May 7, 1985.  Therefore, summary judgment in favor of the City is appropriate on this issue.

**B.**    **Defendant's Actions Were Willful and Without Good Faith**

Plaintiffs argue they "complained of the lack of overtime pay, and the Defendant stated to

them that they were not owed overtime."  As more fully discussed in Section IV(B)(a) and (b),

these "complaints" amount to two hearsay statements allegedly made by former Mayor Walter

Johnson and former Alderman Herman Hendrix: (1)  "Mayor Johnson . . . told them they were

not going to receive overtime" (per Randle's testimony); (2)  "[Hendrix stated ] we are not going

to pay you overtime" (per Hamric's testimony).  As shown through the testimony of Roger

McMillin, Jim Owen and Tom Cooper, with the adoption of the 18 day work period on May 7,

1985, the City held a good faith belief it was in compliance with the wage and hour provisions of

the FLSA.  The City does not dispute the fact some amount of overtime pay is due the Plaintiffs,

and admits liability to that extent.  The City also recognizes a violation of the FLSA necessitates

an award of liquidated damages.  However, "[a]n employer may avoid the mandatory nature of

an award of liquidated damages if the court chooses not to make an award where the employer

shows its actions were in good faith and shows it had reasonable grounds for believing that those

actions did not violate the FLSA." 29 U.S.C. Sections 216(b) and 260; *Glenn v. General Motors

Corp.*, 841 F.2d 1567, 1573 (11th Cir. 1988). Even if it is determined the employer's actions

were in good faith, the court retains discretion to award liquidated damages. *Heidtman v. County

of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999). 29 C.F.R. Section 790.22 provides as follows:

> (a) ... in any action brought under the [FLSA] to recover unpaid . . . overtime
> compensation . . . the court may, subject to prescribed conditions, in its sound
> discretion award no liquidated damages . . . (b) the conditions prescribed as
> prerequisites to such an exercise of discretion are two: (1) the employer must
> show to the satisfaction of the court, that the act or omission giving rise to such
> action was in good faith; and (2) he must show also, to the satisfaction of the
> court, that he had reasonable grounds for believing that his act or omission was
> not a violation of the [FLSA]. If these conditions are met by the employer against
> whom the suit is brought, the court is permitted, but not required, in its sound
> discretion, to reduce or eliminate the liquidated damages which would otherwise
> be required.

"Good faith is an honest intention to ascertain what the [FLSA] requires and to act in

accordance with it." *EEOC v. First Citizens Bank*, 758 F.2d 397, 403 (9th Cir.), *cert. denied*, 474

U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985). The question is whether the City subjectively

intended honestly to obey the Act, and whether it had reasonable grounds to believe that its

conduct complied with the FLSA. *See Marshall v. Brunner*, 668 F.2d 748, 753 (3rd Cir. 1982).

There is no evidence the City suspected it was out of compliance with the FLSA prior to the

filing of this lawsuit, as was the case in *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 469 (5th

Cir. 1979), a case cited by the Plaintiffs. The Section 260 good faith defense presents a

formidable hurdle to the City. However, it is a defense available to the City. To hold summary

judgment is proper at this stage in the litigation, based on the evidence before the court, would be

11

tantamount to eliminating the defense altogether.  In other words, Plaintiffs' argument is

essentially that if the FLSA is violated, there can be no good faith.  Summary judgment on this

issue is not proper.  The same is true for Plaintiff's argument the City's actions were willful.

Again, the City has produced testimony from former city officials that it was their belief the City

was in compliance with the FLSA following the passage of the 18 day work period in 1985.  All

reasonable inferences must be drawn in favor of the non-movant, and summary judgment should

be denied.

## IV.
## RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON ISSUE OF EQUITABLE TOLLING AND EQUITABLE ESTOPPEL; DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

29 U.S.C. Section 255(a) sets forth the statute of limitations for claims brought pursuant

the FLSA.  If the Defendant's conduct is not willful, the two (2) year statute of limitations

applies.  If the conduct was willful, the three (3) year statute of limitations applies. Plaintiffs have

requested this Court remove the Section 255(a) limitation, thereby allowing the fire fighters to

pursue all overtime wages due from 1981 forward.[6]  The firemen advance two theories in support

of their equitable tolling/equitable estoppel argument: (1) that "the Defendant continued to lull

the Plaintiffs into believing it was unnecessary to commence litigation by informing them that the

Defendant's pay practices were in compliance with the [FLSA]"; (2) that the City's failure to

post notice under the FLSA equitably tolls the statute of limitations.

### A.    Equitable Tolling/Equitable Estoppel

"The federal doctrine of equitable tolling of a statute of limitations was developed in the

_____

[6]There is no evidence of which of the Plaintiffs were working in 1981, or the number of hours worked by any of the firemen prior to 2002.

context of actions based on fraud." *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985) (*citing Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875). "The essence of the doctrine 'is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action.'" *Id.* (*quoting Long v. Abbott Mortgage Corp.*, 459 F.Supp. 108, 113 (D.Conn. 1978). Continuing its discussion of equitable tolling, the *Cerbone* court stated:

> Since the nature of a fraud or subsequent actions taken by the defendant to conceal the fraud may have made it impossible for a plaintiff to discover the facts underlying his cause of action until after the limitations period had expired, the courts fashioned the doctrine of equitable tolling to relieve the plaintiff of the rigor of the statutory bar. Under this doctrine, the statute does not begin to run until "the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprized of sufficient facts to put him on notice." The doctrine has been applied in cases alleging causes of action other than fraud where the facts show that the defendant engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action. *Id.* [Citations omitted].

Equitable tolling of the limitations period is to be granted sparingly, in situations where "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allow the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *see also Chao v. Virginia Dept. of Transportation*, 291 F.3d 276, 283 (4th Cir. 2002) (equitable tolling permitted under narrow circumstances). Equitable tolling is not generally available where the claimant "failed to exercise due diligence in preserving his legal rights." *Id.* at 96, 111 S.Ct. 453. Furthermore, application of the doctrine is allowed only under exceptional circumstances and only if the party asserting it

13

has actively pursued his claim.  *Id.*; *see also Baldwin County Welcome Center v. Brown*, 466

U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984).

Equitable estoppel and equitable tolling are distinct theories: "Unlike equitable tolling,

which is invoked in cases where the plaintiff is ignorant of his cause of action because of the

defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff

knew of the existence of his cause of action but the defendant's conduct caused him to delay in

bringing his lawsuit."  *Id.* at 50; *see also Rhodes v. Guiberson Oil Tools*, 927 F.2d 876, 878 (5th

Cir. 1991) (equitable tolling focuses on plaintiff's excusable ignorance of employer's

discriminatory act; equitable estoppel examines the defendant's conduct and the extent to which

the plaintiff has been induced to refrain from exercising his rights).  The party claiming equitable

estoppel "must have relied on its adversary's conduct."  *Heckler v. Community Health Services of*

*Crawford County, Inc.*, 467 U.S. 51, 59, n.9, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).

Therefore, for the plaintiffs to prevail under either theory in the instant motion, they must

present evidence the City of New Albany either fraudulently concealed their FLSA claims

(equitable tolling), or made representations upon which the firemen relied that caused them to

delay the filing of the lawsuit (equitable estoppel).  The City contends that not only does the

plaintiffs' "evidence" fail from a summary judgment perspective, summary judgment is proper in

favor of the City on this issue.  *See Cerbone*, 768 F.2d at 47 (2d Circuit affirmed summary

judgment in favor of defendant on grounds plaintiff failed "to allege facts on which the jury

could find that the limitations period had been tolled.").

**B.**    **Plaintiffs' Evidence in Support of Equitable Tolling/Equitable Estoppel**

Plaintiffs make one broad statement in support of this claim, citing the deposition

testimony of Chief Richard Hamric and Brian Randle: "On numerous occasions, the Plaintiffs requested overtime pay from the Defendant, however, the Defendant informed the Plaintiffs that they were not owed overtime each time."  It is well-settled a municipality speaks through its minutes reflecting actions taken by the Mayor and Board of Aldermen.  *Mayor and Board of Aldermen, City of Clinton v. Welch*, 888 So.2d 416, 432 (Miss. 2004).  There is no evidence the City, through its minutes, received and denied an official request for overtime from the fire department.

a.    **Brian Randle's Testimony**

      Randle testified as follows:

Q.  Tell me what you recall about your conversations regarding wage and hour with Chief Douell.

A. *** – **this is kind of vague** . . . but I remember a conversation where this would have been back before I had started.  But [Chief Douell] told me of an incident where they had **asked for a raise**.  This is back when Walter Johnson would have been in office I believe.  **And I can't remember if he said there was something mentioned about the overtime or was not**.  But that Walter Johnson basically told them in a meeting that they were not going to receive overtime.  And what they were paid, you know, that's what – that's what the pay would be.  Outside of that, just a general, you know, questioning [Chief Douell] of the overtime.  And we – to be honest, we were just brushed off on it. ***

Q. *** You were talking about a meeting where former Mayor Johnson had some things to say to the fire department.  My understanding of it was that you were not present at that –

A.  No, no, no, no.

Q.  Okay.

A.  That's just strictly – strictly what, you know, he had told me.  I don't know that to be 100 percent sure at all.  **That's just what I heard**.

Q.  When you say "he told me," to whom are you referring.

A.  To Chief Douell.

Q. *** Did you directly inquire of Chief Douell of, you know, we're not being paid enough overtime or words to that effect.

A. Yes.

Q. Okay. What's your best recollection of his response to that?

A. It was in regards actually to a couple of overtime shifts that I had worked. This was back when I was still relief driver. *** **And actually, it wasn't even asked in the form of overtime pay**. You know, could we get some kind of pay in place of a day off because it was taking away from our part-time jobs so bad. *** So that's – best of my recollection, **that was all that was ever mentioned about it.**

(Randle dep., pp. 15-17) (emphasis added).

There are several problems with Randle's testimony. First, it is based on purported statements made by former Mayor Walter Johnson during a meeting Randle admitted he did not attend. These purported statements are rank hearsay. Second, Randle's recollection is admittedly vague, and he was unclear as to whether the issue was overtime or a request for an increase in salary.

**b.    Chief Richard Hamric**

Plaintiffs also rely on Chief Hamric's testimony, who testified he had no knowledge as to whether the overtime issue had ever been brought to the Board's attention by any of the firemen. (Hamric dep., pp. 22-23). The only city official Hamric discussed the overtime issue with was Herman Hendrix, a former (and deceased) alderman. Hamric, who "assumed [Hendrix] was speaking for the whole board", testifed Hendrix told him "we are not going to pay you overtime." (Hamric dep., p. 22). Again, the statement is rank hearsay.

Therefore, the sum total of plaintiffs' evidence are two statements purportedly made by former Mayor Walter Johnson and former Alderman Herman Hendrix - "Mayor Johnson . . . told

16

them they were not going to receive overtime" (per Randle); "[Hendrix stated ] we are not going to pay you overtime" (per Hamric). Notwithstanding the fact these statements are rank hearsay, and there is no evidence as to when these purported statements were made, this complete lack of evidence warrants summary judgment in favor of the City.

With respect to equitable estoppel, there is absolutely no evidence of conduct, much less fraudulent conduct, on the part of the City that induced the firemen from exercising their rights under the FLSA. If the firemen claim, based on the Randle/Hamric testimony, that they requested and were denied overtime, it logically follows they were aware of their rights and failed to act. Therefore, the City should be not be estopped from claiming the statute of limitations as set forth in 29 U.S.C. Section 255(a). With respect to equitable tolling, there is absolutely no evidence the City fraudulently concealed from the plaintiffs the existence of this cause of action. There is absolutely no evidence the City, as claimed by the firemen, "continued to lull the Plaintiffs into believing it was unnecessary to commence litigation by informing them that the Defendant's pay practices were in compliance with the [FLSA]."

**C.    The City's Alleged Failure to Post under 29 C.F.R. Section 516.4**

Plaintiffs contend the City's failure to post a wage and hour poster pursuant 29 C.F.R. Section 516.4 provides grounds to invoke the doctrine of equitable tolling/estoppel. As an initial matter, there is a fact dispute as to the City's purported failure to post. Several firemen testified they "never saw" a wage and hour poster. Former Chief William Douell testified as follows:

Q. ***I'm going to represent to you that a lot of the fire fighters have testified that there is no Department of Labor posting at the fire station for a long time. Do you remember a posting for the Department of Labor?

A. There was one in 2001, July the first of 2001 when I left there, there was one. It was about 12

inches wide and about, I'm going to say 18 inches long and some of it was bold print, big print stuff.  I received the stuff in the mail periodically.

Q.  Uh-huh (Affirmative).

A.  And the minute I got it it was put underneath the state there on the bulletin board.

Q.  Who did you receive this from?

A.  I don't even know.  I just figured it was somebody with the Fair Labor Board, Right to Work Board or something.  We got it in a big packet.

Q.  Did you request it?

A.  I requested it once the first time and then after that we got updates on it.

Q.  When did you request it?

A.  Gosh, I'm going to say it was around '92, somewhere along there.

(Douell dep., pp. 24-25).

Notwithstanding this factual dispute, Plaintiffs' argument is necessarily founded on the assumption they were ignorant of their rights pursuant the FLSA.  In other words, the City's failure to post notice pursuant 29 C.F.R. Section 516.4 prevented them from such knowledge.  This argument is directly contradicted by plaintiffs' argument and the testimony upon which it is based.  Plaintiffs contend they "repeatedly requested overtime pay", which logically implies they believed they were owed overtime.  Chief Richard Hamric testified he first became aware of a possible wage and hour violation in the early 1980's.  (Hamric dep., p. 21).

Attached as Exhibit "I" is a job description for the City of New Albany Fire Chief.  The firemen do not deny this job description was posted at the fire station.  (*See* James Cobb dep., p. 29).  One of the qualifications set forth on the Chief's job description is "Knowledge of:

18

Pertinent Federal, State, and local laws, codes and regulations." Therefore, the duty to post

pursuant 29 C.F.R. 516.4 rested with the Chief, and the firemen had an avenue through which

they could have discussed any potential wage and hour claims.

In support of the "failure to post" - equitable tolling/estoppel argument, Plaintiffs cite

*Kamens v. Summit Stainless*, 586 F.Supp. 324 (E.D. Pa. 1984) and *Friedrich, et al v. U.S.*

*Computer Services, Inc.*, 833 F.Supp. 470 (E.D. Pa. 1993). Both *Kamens* and *Friedrich* were

decisions that relied on the earlier case of *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3rd

Cir. 1978). All three Pennsylvania cases stand for the proposition that the failure to post

automatically invokes the equitable tolling doctrine. However, *Bonham* and its progeny have not

been followed in other circuits. *See McClinton v. Alabama By-Products Corporation*, 743 F.2d

1483, 1486 (11th Cir. 1984) (employer's failure to post the requisite notice will equitably toll the

180-day notification period, but "it will not normally toll the two-year statute of limitations for

bringing the action in court"); *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527, 1530 (11th

Cir. 1983) (court declined to allow equitable tolling based on defendant's failure to post notice

that did not advise employees of two year statute of limitations); *Antenor v. D & S Farms*, 39

F.Supp.2d 1372, 1380 (S.D. Fla. 1999) (declining to follow *Bonham*); *Viciedo v. New Horizons*

*Computer Learning Center of Columbus, LTD.*, 246 F.Supp.2d 886, 904 (S.D. Ohio 2003)

(argument for equitable tolling based on failure to post FLSA notice improper as a matter of

law); *Claeys v. Gandalf, LTD.*, 303 F.Supp.2d 890, 896 (argument for equitable tolling based on

failure to post FLSA notice improper as a matter of law); *Spradlin v. City of Fulton*, 1996 WL

33370642 at *4 (N.D.Miss. 1996) (even if notice was insufficient, inquiry would not end - if

plaintiff had actual knowledge or the means of acquiring knowledge, tolling would be

inappropriate); *Archer v. Sullivan County, Tennessee*, 129 F.3d 1263, 1997 WL 720406 at *4 (6th

Cir. 1997) (statute itself provides constructive notice of rights; county's failure to post notice

does not justify invocation of the tolling doctrine).

   Plaintiffs motion for summary judgment should be denied, and Defendant's cross-

motion for summary judgment on the issues of equitable tolling and equitable estoppel should be

granted.

## V.  CONCLUSION

   The City of New Albany does not dispute liability, only the extent of the amount of

unpaid overtime compensation owed the Plaintiffs.  Several issues determinative of the amount

of overtime owed are not before the court, with the exception of the issue as to whether the City

adopted a 7(k) work period.  Clearly, the City took the necessary steps to adopted the 7(k) work

period as reflected in the May 7, 1985 minute entry, at which time an 18 day work period was

established for the fire department.  Therefore, the City's motion for summary judgment on the

7(k) issue, also pending in this Court, should be granted.  With respect to the Plaintiffs request

for summary judgment on the issue of whether the City's actions were in good faith and/or

willful, the City's position is that given the evidence before the Court, that motion should be

denied.  Finally, Plaintiffs' evidence clearly is insufficient to award summary judgment on the

issues of equitable tolling and equitable estoppel.  Based on the evidence, summary judgment

should be granted to the City on these issues.

   WHEREFORE, PREMISES CONSIDERED, the City of New Albany admits it is liable

to the Plaintiffs for unpaid overtime in an amount to be determined at trial, requests this Court

grant summary judgment to the City on the issue of whether a 7(k) work period was established,

requests the Court deny the Plaintiffs' motion for summary judgment on the good faith/willful

issues, requests the Court deny Plaintiffs' motion for summary judgment on the equitable

estoppel and equitable tolling issues, and grant the City's cross-motion for summary judgment on

those issues.

   Respectfully submitted, this the 24th day of May, 2006.

          SUMNERS, CARTER & MUELLER, P.A.
          Attorneys for Defendant
          P.O. Drawer 730
          New Albany, MS 38652
          (662) 534-6326

    BY:  *s/ Thad J. Mueller*
          THAD J. MUELLER, MB #10058

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

nick@louiswatson.com
louis@louiswatson.com

And I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants: None.

*s/ Thad J. Mueller*
Thad J. Mueller, MB #10058